**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* **N.Z.**

**No. 21-0012** (Kanawha County 19-JA-606)

**MEMORANDUM DECISION**

Petitioner Father A.Z., by counsel Edward L. Bullman, appeals the Circuit Court of Kanawha County's October 1, 2020, order terminating his parental rights to N.Z.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Patrick Morrisey and S.L. Evans, filed a response in support of the circuit court's order. The guardian ad litem, Sharon K. Childers, filed a response on behalf of the child in support of the circuit court's order. The maternal grandparents, P.H and R.H., also filed a response in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating his parental rights without granting him an improvement period.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In October of 2019, the DHHR filed an abuse and neglect petition alleging that petitioner wrecked an automobile with N.Z. in the car. The child was hospitalized for his injuries. According to the DHHR, petitioner suffered from narcolepsy and fell asleep at the wheel. The DHHR further alleged that petitioner was not compliant with his treatment for the disease yet continued to drive. It was later reported that petitioner was under the influence at the time of the accident, having tested positive for THC and methamphetamine. When the DHHR contacted petitioner at the hospital, he "readily admitted to using methamphetamines on a daily basis" and explained that they "helped make his narcolepsy better." According to petitioner, he stopped taking his narcolepsy medication ten years prior after he tested positive for marijuana, and his doctor quit

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

prescribing him the medication. During the DHHR's investigation, several individuals made disclosures about issues in petitioner's home, including domestic violence and drug abuse. Based on its investigation, the DHHR alleged that petitioner abused and neglected the child by virtue of his substance abuse and perpetration of domestic violence. Following the petition's filing, petitioner waived his preliminary hearing. At that time, the court ordered the DHHR to provide petitioner with services, including parenting and adult life skills classes, domestic violence counseling, and random drug screens.

At an adjudicatory hearing in November of 2019, petitioner stipulated that his substance abuse affected his ability to properly parent the child and that his untreated narcolepsy led to the accident in which the child was injured. As such, the court adjudicated petitioner as an abusing parent and ordered that he continue to participate in services as previously ordered, including undergoing a parental fitness evaluation. Ultimately, petitioner's parental fitness examination revealed that he failed to acknowledge his abusive conduct. Specifically, when asked "if he had done anything that was either abusive or neglectful," petitioner replied, "No. I'm not abusive." Petitioner also denied that any conduct in the home related to drug use endangered the child. The report concluded as follows: "Given his minimal acceptance of responsibility, his failure to maintain sobriety for any extended period of time and his highly dysfunctional personality traits, [petitioner's] prognosis for improved parenting . . . is very poor."

Thereafter, petitioner moved for a post-adjudicatory improvement period, and the circuit court held a hearing on the motion in June of 2020. The record shows that by this point, petitioner had not yet participated in substance abuse treatment or domestic violence counseling, as ordered. Based on petitioner's failure to participate in these services, and the conclusion of petitioner's parental fitness evaluator, the court found that petitioner could not satisfy his burden for obtaining an improvement period and denied the motion. Following the hearing, petitioner filed a motion for a post-dispositional improvement period.

In August of 2020, the court held a dispositional hearing, during which the DHHR introduced evidence that petitioner continued to deny domestic violence occurred in the home, despite disclosures from several individuals. Additionally, when petitioner's girlfriend testified, she initially denied domestic violence occurred, but then later blamed the domestic violence on her and petitioner's drug use. The court also noted that petitioner's parental fitness evaluation recommended that he complete a domestic violence program but that he never submitted to such treatment. Further, the court found that despite the case having been pending for almost one year, petitioner did not seek drug treatment until the week prior to the dispositional hearing. The court also extensively referenced petitioner's parental fitness evaluation, noting that petitioner's "very poor" prognosis for improved parenting was based on his minimal acceptance of responsibility, his failure to maintain sobriety for any extended period, and his highly dysfunctional personality traits. The court also noted that N.Z.'s psychological evaluation indicated a need for a structured, stable, supportive home environment, which the court found petitioner could not provide. The court found that N.Z., then twelve years old, did not want to return to petitioner's care and, instead, wished to be adopted by his grandparents. Based on the evidence, the court found that there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect in the near future and that termination of his parental rights was necessary for the child's

welfare. As such, the court terminated petitioner's parental rights to the child.[2] It is from the dispositional order that petitioner appeals.

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that he should have been entitled to an improvement period because he alleges that he complied with all services offered and never tested positive on his drug screens. This argument, however, misrepresents the record and does not entitle petitioner to relief. Contrary to petitioner's argument, the record shows that he failed to participate in substance abuse treatment until approximately one week before disposition. Further, the record shows that petitioner failed to participate in domestic violence counseling, as ordered.[3] While it may be true that petitioner participated in some services, the fact that he failed to participate in these two critical services for almost the entirety of the proceedings undermines his entire argument before this Court.

As we have explained, a parent's "entitlement to an improvement period is conditioned upon the ability of the [parent] to demonstrate 'by clear and convincing evidence, that the [parent] is likely to fully participate in the improvement period.'" *In re Charity H.*, 215 W. Va. 208, 215, 599 S.E.2d 631, 638 (2004) (citation omitted). Contrary to petitioner's arguments, the record shows that petitioner could not satisfy this burden because he refused to participate in substance abuse treatment and domestic violence counseling, as ordered. On appeal, petitioner argues that

---

[2]N.Z.'s mother is deceased. The permanency plan for N.Z. is adoption by the maternal grandparents.

[3]On appeal, petitioner asserts that the DHHR did not offer him domestic violence counseling. However, the citation to the record he includes to support this assertion points to a portion of the appendix record that is a signature page for the court's preliminary hearing order. This is in violation of Rule 10(c)(7) of the Rules of Appellate Procedure, which requires that "[t]he argument must contain appropriate and specific citations to the record on appeal." As such, we find that petitioner has failed to sufficiently support this assertion.

he was not adjudicated for domestic violence, yet he fails to point to any portion of the record where he objected to the requirement that he participate in domestic violence counseling. As such, he has waived his right to challenge this requirement on appeal. *Noble v. W. Va. Dep't of Motor Vehicles*, 223 W. Va. 818, 821, 679 S.E.2d 650, 653 (2009) ("Our general rule is that nonjurisdictional questions . . . raised for the first time on appeal, will not be considered."). Curiously, petitioner also asserts that the circuit court erred in relying on the opinion of the psychological evaluator without ensuring that he was provided the services recommended from that evaluation. That evaluation recommended, among other things, that petitioner be required to complete domestic violence services. As such, petitioner's assertion that he should not have been required to participate in such services is incongruent with his arguments on appeal and cannot entitle him to relief. Further, petitioner is entitled to no relief in regard to his assertion that the circuit court placed too much emphasis on the evaluator's prognosis, given that "[a]n appellate court may not . . . weigh evidence as that is the exclusive function and task of the trier of fact." *State v. Guthrie*, 194 W. Va. 657, 669 n.9, 461 S.E.2d 163, 175 n.9 (1995).

Importantly, the court also heard evidence about petitioner's unwillingness to accept responsibility for the conditions of abuse and neglect at issue. During his psychological evaluation, petitioner explicitly denied that he engaged in any abusive behavior and that the child was endangered. This was a major contributing factor to the psychologist's prognosis of "very poor," and supports the circuit court's denial of petitioner's motions for improvement periods. As we have held,

> [i]n order to remedy the abuse and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable and in making an improvement period an exercise in futility at the child's expense.

*In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013) (citation omitted). Based on this evidence, we find no abuse of the circuit court's discretion in denying petitioner's motions for improvement periods. *See In re M.M.*, 236 W. Va. 108, 115, 778 S.E.2d 338, 345 (2015) ("West Virginia law allows the circuit court discretion in deciding whether to grant a parent an improvement period."); Syl. Pt. 6, in part, *In re Katie S.*, 198 W. Va. 79, 479 S.E.2d 589 (1996) ("It is within the court's discretion to grant an improvement period within the applicable statutory requirements . . . .").

Finally, petitioner argues that the circuit court erred in finding that there was no reasonable likelihood that he could correct the conditions of abuse and neglect in the near future. According to petitioner, he corrected the conditions. This argument, however, ignores the evidence set forth above concerning petitioner's failure to even acknowledge those conditions, let alone correct them. Contrary to petitioner's arguments, the record shows that petitioner did not submit to substance abuse treatment until approximately one week prior to disposition, evidencing his failure to fully address the main condition of abuse and neglect at issue. Further, while petitioner argues that he did not fail any drug screens during the proceedings, we note that, much like the requirement of domestic violence counseling, he fails to cite to any portion of the record where he objected to the

4

requirement that he attend substance abuse treatment. As such, his negative drug screens are insufficient to establish that he substantially corrected his substance abuse issues.

West Virginia Code § 49-4-604(c)(6) permits circuit courts to terminate parental rights upon finding that there is no reasonable likelihood that the conditions of abuse and neglect can be substantially corrected in the near future and that termination of parental rights is necessary for the children's welfare. Further,

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(d)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). Here, the circuit court made both required findings based upon substantial evidence. As such, petitioner is entitled to no relief.

For the foregoing reasons, we find no error in the decision of the circuit court, and its October 1, 2020, order is hereby affirmed.

Affirmed.

**ISSUED**: November 8, 2021

**CONCURRED IN BY**:

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison

**DISSENTING:**

Justice William R. Wooton